# EXHIBIT A

1   DOWNEY BRAND LLP
    MEGHAN M. BAKER (Bar No. 243765)
2   mbaker@downeybrand.com
    MICHAEL J. LAINO (Bar No. 326369)
3   mlaino@downeybrand.com
    621 Capitol Mall, 18ᵗʰ Floor
4   Sacramento, California 95814
    Telephone:    916.444.1000
5   Facsimile:    916.444.2100

6   Attorneys for Raley's

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF YOLO

10

11  Raley's, a California corporation,

12              Plaintiff,

13        v.

14  Rimini Street, Inc., a Nevada corporation;
    Does 1-10,
15

16              Defendants.

17

Case No. CV2023-2258

**COMPLAINT; DEMAND FOR JURY TRIAL**

ELECTRONICALLY FILED
by Superior Court of CA,
County of Yolo,
on 10/27/2023 3:04 PM
By: A Sullivan, Deputy

18        Plaintiff Raley's, a California corporation, alleges against Defendants Rimini Street, Inc., a

19  Nevada corporation, and Does 1-10, as follows:

20                          **PARTIES**

21        1.      Plaintiff Raley's ("Plaintiff") is and at all times relevant herein was, a corporation

22  organized and existing under the laws of the state of California and authorized to conduct business

23  in California.

24        2.      Defendant Rimini Street, Inc. ("Rimini Street") is and at all times relevant herein

25  was a corporation organized and existing under the laws of the state of Nevada.  Between 2012

26  and 2018, Rimini Street was authorized to conduct business in California.  In 2018, Rimini Street

27  surrendered its right to conduct business in California, but on information and belief, Rimini Street

28  has continued to conduct business in California and currently conducts business in California.

1892481

DOWNEY BRAND LLP

3.      Plaintiff does not currently know the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, whether individual, partnership, corporation, unincorporated association, or otherwise.  After discovery, which is necessary to ascertain the true names and capacities of Does 1 through 10, Plaintiff will amend this complaint to allege the necessary identifying details.

4.      At all material times, each Defendant, including Rimini Street and Does 1 through 10, was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial assistance to the alleged activities, and in doing the things alleged, each was acting within the scope of such agency, service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and each is legally responsible for the acts and omissions of the others.  Rimini Street and Does 1 through 10 are collectively referred to herein as "Defendants."

**JURISDICTION AND VENUE**

5.      The contract discussed herein between Plaintiff and Rimini Street provides that jurisdiction shall be deemed proper in California.  Moreover, Plaintiff is informed and believes, and upon such information and belief alleges, that Defendants have systematically and continuously availed themselves of the privilege of doing business in California.  Defendants advertise, promote, sell, service, and support customers in California.  Defendants therefore have sufficient contacts with California, both generally and specifically, in connection with the facts alleged herein.  Defendants are thus subject to personal jurisdiction in this Court.

6.      The contract discussed herein between Plaintiff and Rimini Street provides that venue shall be deemed proper in California.  Venue is proper in Yolo County because Rimini Street contracted to perform an obligation in this county, entered into a contract in this county, was to perform that contract in this county, and breached the contract in this county.

**GENERAL ALLEGATIONS**

7.      Rimini Street is a global provider of enterprise software products and services, and the leading third-party support provider for software licensed and sold by other companies, including Oracle.

**A.**     **The Master Services Agreement and Statement of Work**

8.     On or about May 9, 2012, Plaintiff and Rimini Street entered into a Master Services Agreement ("MSA") and an accompanying Statement of Work ("SOW"). Unless otherwise indicated herein, capitalized terms herein have the same meaning as in the MSA and SOW.

9.     The MSA and SOW require Rimini Street to provide software support services and deliverables to Plaintiff for the "Covered Products," which is defined as specific software Plaintiff licensed from Oracle. Together, these services and deliverables are collectively referred to in the MSA and SOW (and thus in this Complaint) as the "Services," notwithstanding the fact that the contract contemplates the provision of a combination of services and goods. Plaintiff is informed and believes, and thereon alleges, that the goods aspect of the MSA and SOW predominates since Rimini Street was responsible for providing deliverables in the form of customized code to Plaintiff. In the alternative, the service aspect of the MSA and SOW predominate.

10.     Rimini Street agreed in the SOW to provide Plaintiff with the following services and deliverables during the "Support Period" of May 10, 2012, and June 30, 2027: (1) "diagnostic services, advice, and recommendations relating to the proper operation of" the Covered Products; (2) fixes for Issues Plaintiff encounters in the Covered Products; (3) "fixes to the original code as delivered by Oracle Corporation;" (4) client-made customized code for on-line, batch and report code; and (4) "tax, legal and regulatory updates" for the "Covered Products." In the MSA, these services and deliverables are part of the "Rimini Street Obligations."

11.     In the MSA, Rimini Street agreed to provide sufficient, qualified and knowledgeable personnel capable of (among other things) performing the Services, making necessary and timely decisions on behalf of Rimini Street, facilitating and testing deliverables provided by Rimini Street, and delivering the deliverables prepared by Rimini Street.

12.     As evident in the MSA and SOW, Rimini Street's prompt and timely performance was and is a key component of the contracts between the parties. Confirming this, Rimini Street expressly acknowledged and agreed in the MSA that Plaintiff "relies on Rimini Street for the timely performance of Rimini Street Obligations described herein and that time is of the essence in delivering the Services in accordance with applicable service level commitments."

13.     Rimini Street agreed and expressly warranted in the MSA that its Services would be performed "competently consistent with generally accepted industry standards."

14.     Per the MSA, either party may terminate any SOW issued pursuant to the MSA if the other party is in default of any material term, condition or warranty of that SOW and such default is not cured after written notice of default is provided to the defaulting party.  In addition, per the SOW, Plaintiff may terminate Services for all Covered Products for any reason or no reason at the end of a Support Period year with no less than ninety calendar days written notice prior to the start date of any subsequent Support Period Year.

**B.     Rimini Street Breaches the Contract**

15.     In 2021, Plaintiff informed Rimini Street that a Covered Product was not correctly performing a necessary function.  Rimini Street initially responded by asserting that Plaintiff's position was incorrect and the Covered Product was correctly performing the function.  The parties proceeded to exchange information in an effort to obtain clarity on the issue and reach a resolution.  Ultimately, Rimini Street reached out to third party to request information that would provide the parties with guidance on this issue.

16.     Plaintiff is informed and believes, and thereon alleges, that Rimini Street thereafter obtained information from a third party supporting Plaintiff's position.  On or about November 1, 2021, Rimini Street, through its representative Laurie Gardner, acknowledged for the first time to Plaintiff that Plaintiff's position was correct.  Specifically, in written comments in Rimini Street's case tracking system, Ms. Gardner wrote: "We have finally received the information in writing [from the third party], that we need to proceed with this case."  Ms. Gardner provided this information to Plaintiff and stated, "I believe that you will find that this agrees with your understanding."  Ms. Gardner also represented that she would work with her team "to determine a target delivery date," i.e. the date that Rimini Street would provide Plaintiff with a solution.  On that same day, these comments were transmitted from Rimini Street's case tracking system to Plaintiff's representative Debbie John Lovell via email.  Through these communications, Rimini Street led Plaintiff to believe that a solution would be promptly provided that comported with Plaintiff's position.

17.     A few weeks later, Plaintiff, through its representative Ms. Lovell, sent an email response to Laurie Gardner of Rimini Street.  In this email, Ms. Lovell stated, "Please let me know the target date for your team to deliver the updated code . . . . Once that project is completed, I would appreciate it if you would send us a few examples . . . that we can review to verify the . . . [function in the Covered Product is] running correctly."

18.     In response, on or about November 29, 2021, Rimini Street, through its representative Ms. Gardner, sent an email to Plaintiff, again through its representative Ms. Lovell, stating that the parties were in agreement on the correct function.  Ms. Gardner stated, "Thank you for your patience . . . I am glad we are in agreement on [the function]."  In that email, Ms. Gardner represented that Rimini Street was testing the first iteration of the code changes and promised that she "will have a target delivery date soon."  Again, these communications confirmed that Rimini Street would provide Plaintiff with the requested solution.

19.     On or about December 2, 2021, Rimini Street, through its representative Ms. Gardner, input comments into its case management system indicating that the solution was scheduled for delivery on December 7, 2021.  On that same day, these comments were transmitted from Rimini Street's case tracking system to Plaintiff's representative, Ms. Lovell, via email.

20.     Plaintiff is informed and believes, and thereon alleges, that Rimini Street had no intention of performing its promises to provide new code or any other solution for the Covered Product at the time Rimini Street made the promises.  In the alternative, Plaintiff is informed and believes, and thereon alleges, that Rimini Street may have begun to perform its promises, but subsequently decided to cease all such efforts and to conceal its change in position from Plaintiff, while continuing to represent to Plaintiff that Rimini Street was working on a timely resolution. Discovery is necessary to ascertain Rimini Street's true intentions in this regard.

21.     Rimini Street eventually provided Plaintiff with an update to the Covered Product in December 2021 or early 2022.  But Plaintiff eventually discovered that this update did not solve the problem that the parties had been discussing for the past several months.  Rimini Street did not disclose to Plaintiff that the update did not address the problem identified by Plaintiff, nor did

DOWNEY BRAND LLP

Rimini Street advise Plaintiff that Rimini Street no longer intended to provide a solution for the problem identified by Plaintiff.  Instead, Rimini Street remained silent, thus leading Plaintiff to believe that the issue had been fixed.

22.     After Rimini Street provided the update, Plaintiff performed its own review in an effort to ensure that the Covered Product, as now updated, was correctly performing the function. Unfortunately, Plaintiff discovered that the problem still remained.  Plaintiff promptly brought this discovery to the attention of Rimini Street, including in writing.  In response, Rimini Street acted as though it never agreed with Plaintiff's position about the problem and it never agreed to provide Plaintiff with a solution to address the issue with the function in the Covered Product.  Instead, Rimini Street embarked on a misleading campaign of claiming that there were not issues with the Covered Product.  Rimini Street breached the MSA and SOW by failing to timely provide a solution after Rimini Street obtained information confirming Plaintiff's position was correct, and by thereafter refusing to provide the solution that it had promised to Plaintiff.

23.     On information and belief, Rimini Street understood that if it created new code to correct the function issue in the Covered Product for Plaintiff, Rimini Street would need to provide the same update for its other clients that used the same Covered Product, an endeavor to which Rimini Street would need to devote to significant time and expense.  Underscoring Rimini Street's understanding, in May 2022, in an email from Teresa Hintz of Rimini Street to Ms. Lovell and other employees of Plaintiff, Ms. Hintz stated: "We have delivered this update to hundreds of our clients and feel confident it is correct as delivered in our code."

24.     In June 2022, Ms. Hintz of Rimini Street acknowledged that Plaintiff had previously raised the same issue with the Covered Product.  Ms. Hintz directed Plaintiff to review the prior communications by Rimini Street representative Laurie Gardner from August 2021, which were sent months before Rimini Street received information from the third party providing guidance on this issue, before Ms. Gardner had acknowledged that Plaintiff's position was correct and before Rimini Street promised to provide Plaintiff with a solution.  Ms. Hintz refused Plaintiff's request for their respective teams to discuss the issue, then reiterated "you may want to go back through previous cases to see if we have already addressed [Plaintiff's] concerns."

DOWNEY BRAND LLP

25.     In July 2022, Rimini Street asserted that Plaintiff was Rimini Street's only client who had complained about the issue with the Covered Product, and based on the lack of other complaints, Rimini Street asserted that its position was correct.  Specifically, Ms. Hintz of Rimini Street asserted: "As you know we support hundreds of other clients and none of them have had any issues or questions on this [issue] other than your . . . [team].  So based on that, I feel comfortable in our understanding of this [function]."

26.     In summer 2022, Plaintiff asked Rimini Street to create a solution in the Covered Product that would utilize Plaintiff's understanding of how the [function] should be performed, notwithstanding the fact that Rimini Street disagreed with Plaintiff's position.  In August 2022, Rimini Street refused to do so, stating "we would not code to your internal expectations . . . ."

27.     In September 2022, after further exchanges between the parties, Rimini Street finally acknowledged (again) that Plaintiff was correct and that the Covered Product was not functioning correctly.  Specifically, Rimini Street, through its representative Michelle Davenport, advised Plaintiff: "I just wanted to let you know that we have had several internal discussions, that we agree with you . . . [the function in the Covered Product] isn't right, and that we'll be making changes.  (And I wanted to thank you for being patient and persistent.  Clients like you really do help us develop a better product.)"  But for Plaintiff and other Rimini Street customers operating similarly to Plaintiff, this was not simply a matter of obtaining a "better product," but a matter of having a properly functioning product.  Rimini Street knew that time was of the essence for Plaintiff and its other customers, yet Rimini Street took years to create new code and provide Plaintiff with an appropriate solution for the Covered Product.

28.     Plaintiff wanted to implement the solution as quickly as possible, thus in October 2022, Plaintiff requested that Rimini Street test and implement the promised solution by the beginning of 2023.  On December 7, 2022, Rimini Street, through its Director of Global Quality Assurance, Kim Martinez, advised Plaintiff that it could not meet this deadline due to its many competing priorities, the limited time remaining before year end, and the complexity of the update.  Critically, in this same communication, Ms. Martinez acknowledged that Rimini Street had been dilatory with providing a solution to Plaintiff.  Specifically, Ms. Martinez admitted that Rimini

DOWNEY BRAND LLP

1    Street was "aware of the timeline" and further acknowledged that Rimini Street knew Plaintiff's

2    position regarding the Covered Product was correct *as of November 2021*.  Ms. Martinez

3    cryptically blamed "unforeseen circumstances with our Product Owner at the time . . . ."  Ms.

4    Martinez stated that "after I reviewed this case, I have determined that different team members

5    will need to be involved from Rimini Street."  She offered to have a meeting with Plaintiff to

6    discuss a "work around" until Rimini Street could provide a deliverable.

7         29.    Ultimately, Rimini Street did not implement the solution in Plaintiff's system until

8    March 2023, approximately sixteen months after Rimini Street admittedly became aware of the

9    issue.  Rimini Street's conduct, including its inexcusable delays, has placed Plaintiff in an

10   untenable position.

11   **C.    Oracle Litigation**

12        30.    Rimini Street has been involved in litigation with Oracle (the "Oracle Litigation").

13   In 2010, Oracle filed a lawsuit alleging that its licenses for the Covered Products restricted use of

14   the software to the customer's facility, and that by Rimini Street using the Covered Products at its

15   own facilities, Rimini Street was infringing Oracle's copyrights.  Oracle also alleged Rimini Street

16   used one customer's Covered Product to develop fixes and updates for other customers, and that

17   this also constituted copyright infringement.  Oracle prevailed on these allegations.  A permanent

18   injunction was later issued against Rimini Street to address its copyright infringement.

19        31.    Several years later, Oracle asserted that Rimini Street was violating the permanent

20   injunction with respect to its use of the same Covered Product at issue in this lawsuit.  An

21   evidentiary hearing was conducted on these allegations in September 2021.

22        32.    Before the court issued its ruling on the evidentiary hearing, Rimini Street informed

23   Plaintiff that it agreed with Plaintiff's position on the Covered Product and promised to provide

24   Plaintiff with a solution.  However, after the Court issued its order from the evidentiary hearing,

25   Rimini Street reversed course and acted as though Rimini Street had never agreed to provide

26   Plaintiff with the solution.

27   / / /

28   / / /

DOWNEY BRAND LLP

33.     The court's order from the evidentiary hearing, which was issued in January 2022, found that Rimini Street violated the permanent injunction with respect to the Covered Product, held Rimini Street in contempt, and sanctioned Rimini Street for its conduct.

34.     Plaintiff presently lacks information as to whether and to what extent Rimini Street engaged in the conduct alleged herein based in whole or in part on the Oracle Litigation, but the timing of certain events suggests a potential correlation.  Following discovery, Plaintiff will amend this complaint if and when additional information is obtained indicating Rimini Street engaged in the actions alleged herein based in whole or in part on the Oracle Litigation.

### FIRST CAUSE OF ACTION

**Breach of Contract**

**Against All Defendants**

35.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 34 above as though fully set forth herein.

36.     Plaintiff and Rimini Street entered into a contract, specifically, the MSA and SOW dated May 9, 2012.  Plaintiff did all, or substantially all, of the significant things that the MSA and SOW required Plaintiff to do, including paying Rimini Street all sums due thereunder, or alternatively, that Plaintiff was excused from doing so.

37.     Rimini Street willfully breached the MSA and SOW.  Its breaches include, but are not limited to, failing to timely provide a solution after Rimini Street obtained information confirming Plaintiff's position was correct, and by thereafter refusing to provide the solution that it had promised to Plaintiff.   Additionally, Rimini Street breached the contract by failing to provide sufficient, qualified and knowledgeable personnel capable of (among other things) performing the Services, making necessary and timely decisions on behalf of Rimini Street, facilitating and testing deliverables provided by Rimini Street, and delivering the deliverables prepared by Rimini Street.  Rimini Street also breached the contract and the express warranty therein by failing to perform its Services competently and consistent with generally accepted industry standards.

/ / /

DOWNEY BRAND LLP

38.     Plaintiff has been and/or will be harmed by Rimini Street's breaches, and these breaches are and/or will be a substantial factor in causing Plaintiff's harm.

39.     The MSA purports to limit the remedies and damages Plaintiff may recover for a breach of contract and/or breach of warranty, but these limitations fail of their essential purpose. As alleged herein, Rimini Street was unwilling to provide Plaintiff with a solution despite Plaintiff's repeated requests.  Moreover, Rimini Street's breach was so total and fundamental that it was entirely outside the reasonable expectations of the parties.  In addition or in the alternative, the remedies and damages limitations in the MSA fail because the subject matter of the contract affects the public interest, and/or because Rimini Street cannot contract away its liability for violations of law or regulations, and/or because Rimini Street was grossly negligent in performing its obligations under the contract, and/or because the remedies and damages limitations are unconscionable.

WHEREFORE, Plaintiff seeks relief as set forth in the Prayer for Relief below.

## SECOND CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### Against All Defendants

40.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 39 above as though fully set forth herein.

41.     Every contract, including the MSA and SOW between Plaintiff and Rimini Street, contains an implied covenant of good faith and fair dealing to prevent one party from unfairly frustrating the benefits the other party was entitled to receive under the contract.

42.     By engaging in the conduct alleged herein, Defendants unfairly frustrated the benefits Plaintiff was entitled to receive under the MSA and SOW, and thus breached the implied covenant of good faith and fair dealing.

43.     Plaintiff has been and/or will be harmed by Defendants' breach of the implied covenant, and these breaches are and/or will be a substantial factor in causing Plaintiff's harm.

WHEREFORE, Plaintiff seeks relief as set forth in the Prayer for Relief below.

/ / /

1

### THIRD CAUSE OF ACTION

**Fraud: False Promise**

**Against All Defendants**

44.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 43 above as though fully set forth herein.

45.     As alleged herein, in November and December 2021, Defendants promised to provide Plaintiff with a solution for the problem Plaintiff that identified with the Covered Product.

46.     Plaintiff is informed and believes, and thereon alleges, that Defendants did not intend to perform these promises when they made them.

47.     Plaintiff is informed and believes, and thereon alleges, that Defendants intended for Plaintiff to rely on these promises.

48.     Defendants did not perform their promised acts.

49.     Plaintiff has been and/or will be harmed, and Plaintiff's reliance on Defendants' promises was and/or will be a substantial factor in causing this harm.

WHEREFORE, Plaintiff seeks relief as set forth in the Prayer for Relief below.

### FOURTH CAUSE OF ACTION

**Fraud: Intentional Concealment**

**Against All Defendants**

50.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 49 above as though fully set forth herein.

51.     Plaintiff is informed and believes, and thereon alleges, that Defendants concealed or suppressed material facts from Plaintiff.  As alleged herein, between November 2021 and April 2022, Defendants concealed that they did not intend to provide Plaintiff with a solution for the Covered Product, despite their promises otherwise.  In addition, or in the alternative, Defendants concealed that they had not begun to create, or that they had ceased work to create, the solution Defendants had promised to Plaintiff.  Defendants also concealed that the update Defendants provided to Plaintiff did not contain the promised solution.

/ / /

DOWNEY BRAND LLP

DOWNEY BRAND LLP

52.     Plaintiff is informed and believes, and thereon alleges, that Defendants intentionally failed to disclose these facts, that these facts were known only to Defendants, and that Plaintiff could not have discovered them; and/or that Defendants prevented Plaintiffs from discovering these facts; and/or Defendants disclosed some facts to Plaintiff but intentionally failed to disclose other facts, making their disclosure deceptive.  Accordingly, Defendants had a duty to disclose the concealed facts to Plaintiff.

53.     Plaintiff did not know the concealed facts.

54.     Plaintiff is informed and believes, and thereon alleges, that Defendants intended to deceive Plaintiff by concealing the facts.

55.     Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently, such as by terminating the contract with Rimini Street and/or retaining another consultant to provide a solution for the issue with the Covered Product.

56.     Plaintiff has been and/or will be harmed, and Defendants' concealment was and/or will be a substantial factor in causing this harm.

## FIFTH CAUSE OF ACTION

### Unfair Business Practices, Cal. Business and Prof. § 17200

### Against All Defendants

57.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 56 above as though fully set forth herein.

58.     California Business and Professions Code section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  Defendants have engaged in unfair competition in that they used unfair, unlawful, and/or fraudulent and/or deceptive business practices in the manner described above.  Furthermore, Plaintiff is informed and believes, and thereon alleges, that Defendants have, and continue to engage, in a policy and practice of advertising and soliciting goods and services that Defendants cannot deliver or later refuse to deliver.

59.     As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent business practices, Defendants have been unjustly enriched and Plaintiff has lost money and suffered injury in fact as a result of its payments to Rimini Street for goods that Rimini Street

1    refused to provide.

2         WHEREFORE, Plaintiff seeks relief as set forth in the Prayer for Relief below.

3                              **PRAYER FOR RELIEF**

4         Plaintiff hereby prays for judgment against all Defendants as follows:

5    A.    On the first through four causes of action, damages according to proof;

6    B.    On the fifth cause of action, restitution of the monies Plaintiff paid to Defendants

7          for services that they refused to perform;

8    B.    Interest;

9    C.    Costs of suit incurred herein;

10   D.    Such other legal or equitable relief the court may find proper.

11                            **DEMAND FOR JURY TRIAL**

12        Pursuant to Code of Civil Procedure section 631 and Section 16 of Article I of the

13   California Constitution, Plaintiff demands a jury trial.

14

15   DATED:  October 27, 2023              DOWNEY BRAND LLP

16

17                                    By: _____

18                                         MEGHAN M. BAKER
                                          MICHAEL J. LAINO
19                                        Attorneys for Raley's

20

21

22

23

24

25

26

27

28

DOWNEY BRAND LLP

1892481

13

COMPLAINT

# EXHIBIT B

1  DOWNEY BRAND LLP
   MEGHAN M. BAKER (Bar No. 243765)
2  mbaker@downeybrand.com
   MICHAEL J. LAINO (Bar No. 326369)
3  mlaino@downeybrand.com
   621 Capitol Mall, 18th Floor
4  Sacramento, California 95814
   Telephone:    916.444.1000
5  Facsimile:     916.444.2100

6  Attorneys for Raley's

7

ELECTRONICALLY FILED
by Superior Court of CA,
County of Yolo,
on 10/30/2023 2:56 PM
By: A Akanno, Deputy

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF YOLO

10

11  Raley's, a California corporation,          Case No.  CV2023-2258

12              Plaintiff,                       **FIRST AMENDED COMPLAINT;
                                                 DEMAND FOR JURY TRIAL**
13         v.

14  Rimini Street, Inc., a Nevada corporation;
    Rimini Street, Inc., a Delaware corporation;
15  Does 1-10,

16

17              Defendants.

18

19         Plaintiff Raley's, a California corporation, alleges against Defendants Rimini Street, Inc., a

20  Nevada corporation, Rimini Street, Inc., a Delaware corporation, and Does 1-10, as follows:

21                              **PARTIES**

22         1.     Plaintiff Raley's ("Plaintiff") is and at all times relevant herein was, a corporation

23  organized and existing under the laws of the state of California and authorized to conduct business

24  in California.

25         2.     Defendant Rimini Street, Inc. ("Rimini Street Nevada") is and at all times relevant

26  herein was a corporation organized and existing under the laws of the state of Nevada.  Between

27  2012 and 2018, Rimini Street was authorized to conduct business in California.  In 2018, Rimini

28  Street Nevada surrendered its right to conduct business in California, but on information and

DOWNEY BRAND LLP

1894007

1  belief, Rimini Street Nevada has continued to conduct business in California and currently

2  conducts business in California.  In addition or in the alternative, Plaintiff is informed and

3  believes, and thereon alleges, Rimini Street Nevada merged or otherwise combined with Rimini

4  Street Delaware in 2017, and the two companies have since operated as a single legal entity.

5  Discovery is necessary to ascertain the precise relationship between these two entities.

6        3.      Defendant Rimini Street, Inc. ("Rimini Street Delaware") is a corporation

7  organized in or around October 10, 2017, under the laws of the state of Deleware.  Since June 28,

8  2018, Rimini Street Delaware has been authorized to conduct business in California.  Rimini

9  Street Nevada and Rimini Street Delaware are collectively referred to herein as "Rimini Street."

10        4.      Plaintiff does not currently know the true names and capacities of the Defendants

11  sued herein as Does 1 through 10, inclusive, whether individual, partnership, corporation,

12  unincorporated association, or otherwise.  After discovery, which is necessary to ascertain the true

13  names and capacities of Does 1 through 10, Plaintiff will amend this complaint to allege the

14  necessary identifying details.

15        5.      At all material times, each Defendant, including Rimini Street Nevada, Rimini

16  Street Deleware, and Does 1 through 10, was the agent, servant, employee, partner, joint venturer,

17  representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the others, had full

18  knowledge of and gave substantial assistance to the alleged activities, and in doing the things

19  alleged, each was acting within the scope of such agency, service, employment, partnership, joint

20  venture, representation, affiliation, or conspiracy, and each is legally responsible for the acts and

21  omissions of the others.  Rimini Street Nevada, Rimini Street Deleware, and Does 1 through 10,

22  are collectively referred to herein as "Defendants."

23        **JURISDICTION AND VENUE**

24        6.      The contract discussed herein between Plaintiff and Rimini Street provides that

25  jurisdiction shall be deemed proper in California.  Moreover, Plaintiff is informed and believes,

26  and upon such information and belief alleges, that Defendants have systematically and

27  continuously availed themselves of the privilege of doing business in California.  Defendants

28  advertise, promote, sell, service, and support customers in California.  Defendants therefore have

DOWNEY BRAND LLP

1  sufficient contacts with California, both generally and specifically, in connection with the facts

2  alleged herein.  Defendants are thus subject to personal jurisdiction in this Court.

3      7.      The contract discussed herein between Plaintiff and Rimini Street provides that

4  venue shall be deemed proper in California.  Venue is proper in Yolo County because Rimini

5  Street contracted to perform an obligation in this county, entered into a contract in this county,

6  was to perform that contract in this county, and breached the contract in this county.

7                                    **GENERAL ALLEGATIONS**

8      8.      Rimini Street is a global provider of enterprise software products and services, and

9  the leading third-party support provider for software licensed and sold by other companies,

10 including Oracle.

11 **A.      The Master Services Agreement and Statement of Work**

12     9.      On or about May 9, 2012, Plaintiff and Rimini Street Nevada entered into a Master

13 Services Agreement ("MSA") and an accompanying Statement of Work ("SOW").  Unless

14 otherwise indicated herein, capitalized terms herein have the same meaning as in the MSA and

15 SOW.

16     10.     The MSA and SOW require Rimini Street Nevada to provide software support

17 services and deliverables to Plaintiff for the "Covered Products," which is defined as specific

18 software Plaintiff licensed from Oracle.  Together, these services and deliverables are collectively

19 referred to in the MSA and SOW (and thus in this Complaint) as the "Services," notwithstanding

20 the fact that the contract contemplates the provision of a combination of services and goods.

21 Plaintiff is informed and believes, and thereon alleges, that the goods aspect of the MSA and SOW

22 predominates since Rimini Street Nevada was responsible for providing deliverables in the form

23 of customized code to Plaintiff.  In the alternative, the service aspect of the MSA and SOW

24 predominate.

25     11.     Rimini Street Nevada agreed in the SOW to provide Plaintiff with the following

26 services and deliverables during the "Support Period" of May 10, 2012, and June 30, 2027: (1)

27 "diagnostic services, advice, and recommendations relating to the proper operation of" the

28 Covered Products; (2) fixes for Issues Plaintiff encounters in the Covered Products; (3) "fixes to

DOWNEY BRAND LLP

the original code as delivered by Oracle Corporation;" (4) client-made customized code for on-line, batch and report code; and (4) "tax, legal and regulatory updates" for the "Covered Products." In the MSA, these services and deliverables are part of the "Rimini Street Obligations."

12.     In the MSA, Rimini Street Nevada agreed to provide sufficient, qualified and knowledgeable personnel capable of (among other things) performing the Services, making necessary and timely decisions on behalf of Rimini Street, facilitating and testing deliverables provided by Rimini Street, and delivering the deliverables prepared by Rimini Street.

13.     As evident in the MSA and SOW, Rimini Street's prompt and timely performance was and is a key component of the contracts between the parties.  Confirming this, Rimini Street Nevada expressly acknowledged and agreed in the MSA that Plaintiff "relies on Rimini Street for the timely performance of Rimini Street Obligations described herein and that time is of the essence in delivering the Services in accordance with applicable service level commitments."

14.     Rimini Street Nevada agreed and expressly warranted in the MSA that its Services would be performed "competently consistent with generally accepted industry standards."

15.     Per the MSA, either party may terminate any SOW issued pursuant to the MSA if the other party is in default of any material term, condition or warranty of that SOW and such default is not cured after written notice of default is provided to the defaulting party.  In addition, per the SOW, Plaintiff may terminate Services for all Covered Products for any reason or no reason at the end of a Support Period year with no less than ninety calendar days written notice prior to the start date of any subsequent Support Period Year.

**B.     <u>Rimini Street Breaches the Contract</u>**

16.     In 2021, Plaintiff informed Rimini Street that a Covered Product was not correctly performing a necessary function.  Rimini Street initially responded by asserting that Plaintiff's position was incorrect and the Covered Product was correctly performing the function.  The parties proceeded to exchange information in an effort to obtain clarity on the issue and reach a resolution.  Ultimately, Rimini Street reached out to third party to request information that would provide the parties with guidance on this issue.

/ / /

17.     Plaintiff is informed and believes, and thereon alleges, that Rimini Street thereafter obtained information from a third party supporting Plaintiff's position.  On or about November 1, 2021, Rimini Street, through its representative Laurie Gardner, acknowledged for the first time to Plaintiff that Plaintiff's position was correct.  Specifically, in written comments in Rimini Street's case tracking system, Ms. Gardner wrote: "We have finally received the information in writing [from the third party], that we need to proceed with this case."  Ms. Gardner provided this information to Plaintiff and stated, "I believe that you will find that this agrees with your understanding."  Ms. Gardner also represented that she would work with her team "to determine a target delivery date," i.e. the date that Rimini Street would provide Plaintiff with a solution.  On that same day, these comments were transmitted from Rimini Street's case tracking system to Plaintiff's representative Debbie John Lovell via email.  Through these communications, Rimini Street led Plaintiff to believe that a solution would be promptly provided that comported with Plaintiff's position.

18.     A few weeks later, Plaintiff, through its representative Ms. Lovell, sent an email response to Laurie Gardner of Rimini Street.  In this email, Ms. Lovell stated, "Please let me know the target date for your team to deliver the updated code . . . . Once that project is completed, I would appreciate it if you would send us a few examples . . . that we can review to verify the . . . [function in the Covered Product is] running correctly."

19.     In response, on or about November 29, 2021, Rimini Street, through its representative Ms. Gardner, sent an email to Plaintiff, again through its representative Ms. Lovell, stating that the parties were in agreement on the correct function.  Ms. Gardner stated, "Thank you for your patience . . . I am glad we are in agreement on [the function]."  In that email, Ms. Gardner represented that Rimini Street was testing the first iteration of the code changes and promised that she "will have a target delivery date soon."  Again, these communications confirmed that Rimini Street would provide Plaintiff with the requested solution.

20.     On or about December 2, 2021, Rimini Street, through its representative Ms. Gardner, input comments into its case management system indicating that the solution was scheduled for delivery on December 7, 2021.  On that same day, these comments were transmitted

from Rimini Street's case tracking system to Plaintiff's representative, Ms. Lovell, via email.

21.    Plaintiff is informed and believes, and thereon alleges, that Rimini Street had no intention of performing its promises to provide new code or any other solution for the Covered Product at the time Rimini Street made the promises.  In the alternative, Plaintiff is informed and believes, and thereon alleges, that Rimini Street may have begun to perform its promises, but subsequently decided to cease all such efforts and to conceal its change in position from Plaintiff, while continuing to represent to Plaintiff that Rimini Street was working on a timely resolution. Discovery is necessary to ascertain Rimini Street's true intentions in this regard.

22.    Rimini Street eventually provided Plaintiff with an update to the Covered Product in December 2021 or early 2022.  But Plaintiff eventually discovered that this update did not solve the problem that the parties had been discussing for the past several months.  Rimini Street did not disclose to Plaintiff that the update did not address the problem identified by Plaintiff, nor did Rimini Street advise Plaintiff that Rimini Street no longer intended to provide a solution for the problem identified by Plaintiff.  Instead, Rimini Street remained silent, thus leading Plaintiff to believe that the issue had been fixed.

23.    After Rimini Street provided the update, Plaintiff performed its own review in an effort to ensure that the Covered Product, as now updated, was correctly performing the function. Unfortunately, Plaintiff discovered that the problem still remained.  Plaintiff promptly brought this discovery to the attention of Rimini Street, including in writing.  In response, Rimini Street acted as though it never agreed with Plaintiff's position about the problem and it never agreed to provide Plaintiff with a solution to address the issue with the function in the Covered Product.  Instead, Rimini Street embarked on a misleading campaign of claiming that there were not issues with the Covered Product.  Rimini Street breached the MSA and SOW by failing to timely provide a solution after Rimini Street obtained information confirming Plaintiff's position was correct, and by thereafter refusing to provide the solution that it had promised to Plaintiff.

24.    On information and belief, Rimini Street understood that if it created new code to correct the function issue in the Covered Product for Plaintiff, Rimini Street would need to provide the same update for its other clients that used the same Covered Product, an endeavor to

DOWNEY BRAND LLP

which Rimini Street would need to devote to significant time and expense.  Underscoring Rimini Street's understanding, in May 2022, in an email from Teresa Hintz of Rimini Street to Ms. Lovell and other employees of Plaintiff, Ms. Hintz stated: "We have delivered this update to hundreds of our clients and feel confident it is correct as delivered in our code."

25.     In June 2022, Ms. Hintz of Rimini Street acknowledged that Plaintiff had previously raised the same issue with the Covered Product.  Ms. Hintz directed Plaintiff to review the prior communications by Rimini Street representative Laurie Gardner from August 2021, which were sent months before Rimini Street received information from the third party providing guidance on this issue, before Ms. Gardner had acknowledged that Plaintiff's position was correct and before Rimini Street promised to provide Plaintiff with a solution.  Ms. Hintz refused Plaintiff's request for their respective teams to discuss the issue, then reiterated "you may want to go back through previous cases to see if we have already addressed [Plaintiff's] concerns."

26.     In July 2022, Rimini Street asserted that Plaintiff was Rimini Street's only client who had complained about the issue with the Covered Product, and based on the lack of other complaints, Rimini Street asserted that its position was correct.  Specifically, Ms. Hintz of Rimini Street asserted: "As you know we support hundreds of other clients and none of them have had any issues or questions on this [issue] other than your . . . [team].  So based on that, I feel comfortable in our understanding of this [function]."

27.     In summer 2022, Plaintiff asked Rimini Street to create a solution in the Covered Product that would utilize Plaintiff's understanding of how the [function] should be performed, notwithstanding the fact that Rimini Street disagreed with Plaintiff's position.  In August 2022, Rimini Street refused to do so, stating "we would not code to your internal expectations . . . ."

28.     In September 2022, after further exchanges between the parties, Rimini Street finally acknowledged (again) that Plaintiff was correct and that the Covered Product was not functioning correctly.  Specifically, Rimini Street, through its representative Michelle Davenport, advised Plaintiff: "I just wanted to let you know that we have had several internal discussions, that we agree with you . . . [the function in the Covered Product] isn't right, and that we'll be making changes.  (And I wanted to thank you for being patient and persistent.  Clients like you really do

DOWNEY BRAND LLP

help us develop a better product.)"  But for Plaintiff and other Rimini Street customers operating similarly to Plaintiff, this was not simply a matter of obtaining a "better product," but a matter of having a properly functioning product.  Rimini Street knew that time was of the essence for Plaintiff and its other customers, yet Rimini Street took years to create new code and provide Plaintiff with an appropriate solution for the Covered Product.

29.     Plaintiff wanted to implement the solution as quickly as possible, thus in October 2022, Plaintiff requested that Rimini Street test and implement the promised solution by the beginning of 2023.  On December 7, 2022, Rimini Street, through its Director of Global Quality Assurance, Kim Martinez, advised Plaintiff that it could not meet this deadline due to its many competing priorities, the limited time remaining before year end, and the complexity of the update.  Critically, in this same communication, Ms. Martinez acknowledged that Rimini Street had been dilatory with providing a solution to Plaintiff.  Specifically, Ms. Martinez admitted that Rimini Street was "aware of the timeline" and further acknowledged that Rimini Street knew Plaintiff's position regarding the Covered Product was correct *as of November 2021*.  Ms. Martinez cryptically blamed "unforeseen circumstances with our Product Owner at the time . . . ."  Ms. Martinez stated that "after I reviewed this case, I have determined that different team members will need to be involved from Rimini Street."  She offered to have a meeting with Plaintiff to discuss a "work around" until Rimini Street could provide a deliverable.

30.     Ultimately, Rimini Street did not implement the solution in Plaintiff's system until March 2023, approximately sixteen months after Rimini Street admittedly became aware of the issue.  Rimini Street's conduct, including its inexcusable delays, has placed Plaintiff in an untenable position.

**C.     <u>Oracle Litigation</u>**

31.     Rimini Street has been involved in litigation with Oracle (the "Oracle Litigation").  In 2010, Oracle filed a lawsuit alleging that its licenses for the Covered Products restricted use of the software to the customer's facility, and that by Rimini Street using the Covered Products at its own facilities, Rimini Street was infringing Oracle's copyrights.  Oracle also alleged Rimini Street used one customer's Covered Product to develop fixes and updates for other customers, and that

1   this also constituted copyright infringement.  Oracle prevailed on these allegations.  A permanent

2   injunction was later issued against Rimini Street to address its copyright infringement.

3        32.    Several years later, Oracle asserted that Rimini Street was violating the permanent

4   injunction with respect to its use of the same Covered Product at issue in this lawsuit.  An

5   evidentiary hearing was conducted on these allegations in September 2021.

6        33.    Before the court issued its ruling on the evidentiary hearing, Rimini Street informed

7   Plaintiff that it agreed with Plaintiff's position on the Covered Product and promised to provide

8   Plaintiff with a solution.  However, after the Court issued its order from the evidentiary hearing,

9   Rimini Street reversed course and acted as though Rimini Street had never agreed to provide

10  Plaintiff with the solution.

11       34.    The court's order from the evidentiary hearing, which was issued in January 2022,

12  found that Rimini Street violated the permanent injunction with respect to the Covered Product,

13  held Rimini Street in contempt, and sanctioned Rimini Street for its conduct.

14       35.    Plaintiff presently lacks information as to whether and to what extent Rimini Street

15  engaged in the conduct alleged herein based in whole or in part on the Oracle Litigation, but the

16  timing of certain events suggests a potential correlation.  Following discovery, Plaintiff will

17  amend this complaint if and when additional information is obtained indicating Rimini Street

18  engaged in the actions alleged herein based in whole or in part on the Oracle Litigation.

19                        **FIRST CAUSE OF ACTION**

20                          **Breach of Contract**

21                          **Against All Defendants**

22       36.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 35 above

23  as though fully set forth herein.

24       37.    Plaintiff and Rimini Street entered into a contract, specifically, the MSA and SOW

25  dated May 9, 2012.  Plaintiff did all, or substantially all, of the significant things that the MSA and

26  SOW required Plaintiff to do, including paying Rimini Street all sums due thereunder, or

27  alternatively, that Plaintiff was excused from doing so.

28  / / /

DOWNEY BRAND LLP

38.     Rimini Street willfully breached the MSA and SOW.  Its breaches include, but are not limited to, failing to timely provide a solution after Rimini Street obtained information confirming Plaintiff's position was correct, and by thereafter refusing to provide the solution that it had promised to Plaintiff.   Additionally, Rimini Street breached the contract by failing to provide sufficient, qualified and knowledgeable personnel capable of (among other things) performing the Services, making necessary and timely decisions on behalf of Rimini Street, facilitating and testing deliverables provided by Rimini Street, and delivering the deliverables prepared by Rimini Street.  Rimini Street also breached the contract and the express warranty therein by failing to perform its Services competently and consistent with generally accepted industry standards.

39.     Plaintiff has been and/or will be harmed by Rimini Street's breaches, and these breaches are and/or will be a substantial factor in causing Plaintiff's harm.

40.     The MSA purports to limit the remedies and damages Plaintiff may recover for a breach of contract and/or breach of warranty, but these limitations fail of their essential purpose. As alleged herein, Rimini Street was unwilling to provide Plaintiff with a solution despite Plaintiff's repeated requests.  Moreover, Rimini Street's breach was so total and fundamental that it was entirely outside the reasonable expectations of the parties.  In addition or in the alternative, the remedies and damages limitations in the MSA fail because the subject matter of the contract affects the public interest, and/or because Rimini Street cannot contract away its liability for violations of law or regulations, and/or because Rimini Street was grossly negligent in performing its obligations under the contract, and/or because the remedies and damages limitations are unconscionable.

WHEREFORE, Plaintiff seeks relief as set forth in the Prayer for Relief below.

## SECOND CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### Against All Defendants

41.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 40 above as though fully set forth herein.

DOWNEY BRAND LLP

42.     Every contract, including the MSA and SOW between Plaintiff and Rimini Street, contains an implied covenant of good faith and fair dealing to prevent one party from unfairly frustrating the benefits the other party was entitled to receive under the contract.

43.     By engaging in the conduct alleged herein, Defendants unfairly frustrated the benefits Plaintiff was entitled to receive under the MSA and SOW, and thus breached the implied covenant of good faith and fair dealing.

44.     Plaintiff has been and/or will be harmed by Defendants' breach of the implied covenant, and these breaches are and/or will be a substantial factor in causing Plaintiff's harm.

WHEREFORE, Plaintiff seeks relief as set forth in the Prayer for Relief below.

## THIRD CAUSE OF ACTION

### Fraud: False Promise

### Against All Defendants

45.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 44 above as though fully set forth herein.

46.     As alleged herein, in November and December 2021, Defendants promised to provide Plaintiff with a solution for the problem Plaintiff that identified with the Covered Product.

47.     Plaintiff is informed and believes, and thereon alleges, that Defendants did not intend to perform these promises when they made them.

48.     Plaintiff is informed and believes, and thereon alleges, that Defendants intended for Plaintiff to rely on these promises.

49.     Defendants did not perform their promised acts.

50.     Plaintiff has been and/or will be harmed, and Plaintiff's reliance on Defendants' promises was and/or will be a substantial factor in causing this harm.

WHEREFORE, Plaintiff seeks relief as set forth in the Prayer for Relief below.

/ / /

/ / /

DOWNEY BRAND LLP

1894007

**DOWNEY BRAND LLP**

## FOURTH CAUSE OF ACTION

### Fraud: Intentional Concealment

### Against All Defendants

51.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 50 above as though fully set forth herein.

52.     Plaintiff is informed and believes, and thereon alleges, that Defendants concealed or suppressed material facts from Plaintiff.  As alleged herein, between November 2021 and April 2022, Defendants concealed that they did not intend to provide Plaintiff with a solution for the Covered Product, despite their promises otherwise.  In addition, or in the alternative, Defendants concealed that they had not begun to create, or that they had ceased work to create, the solution Defendants had promised to Plaintiff.  Defendants also concealed that the update Defendants provided to Plaintiff did not contain the promised solution.

53.     Plaintiff is informed and believes, and thereon alleges, that Defendants intentionally failed to disclose these facts, that these facts were known only to Defendants, and that Plaintiff could not have discovered them; and/or that Defendants prevented Plaintiffs from discovering these facts; and/or Defendants disclosed some facts to Plaintiff but intentionally failed to disclose other facts, making their disclosure deceptive.  Accordingly, Defendants had a duty to disclose the concealed facts to Plaintiff.

54.     Plaintiff did not know the concealed facts.

55.     Plaintiff is informed and believes, and thereon alleges, that Defendants intended to deceive Plaintiff by concealing the facts.

56.     Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently, such as by terminating the contract with Rimini Street and/or retaining another consultant to provide a solution for the issue with the Covered Product.

57.     Plaintiff has been and/or will be harmed, and Defendants' concealment was and/or will be a substantial factor in causing this harm.

/ / /

/ / /

1

2

3

### FIFTH CAUSE OF ACTION

### Unfair Business Practices, Cal. Business and Prof. § 17200

### Against All Defendants

4        58.      Plaintiff incorporates by reference the allegations in paragraphs 1 through 57 above

5   as though fully set forth herein.

6        59.      California Business and Professions Code section 17200 prohibits "any unlawful,

7   unfair or fraudulent business act or practice."  Defendants have engaged in unfair competition in

8   that they used unfair, unlawful, and/or fraudulent and/or deceptive business practices in the

9   manner described above.  Furthermore, Plaintiff is informed and believes, and thereon alleges, that

10  Defendants have, and continue to engage, in a policy and practice of advertising and soliciting

11  goods and services that Defendants cannot deliver or later refuse to deliver.

12       60.      As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent

13  business practices, Defendants have been unjustly enriched and Plaintiff has lost money and

14  suffered injury in fact as a result of its payments to Rimini Street for goods that Rimini Street

15  refused to provide.

16       WHEREFORE, Plaintiff seeks relief as set forth in the Prayer for Relief below.

17                               ### PRAYER FOR RELIEF

18  Plaintiff hereby prays for judgment against all Defendants as follows:

19  A.       On the first through four causes of action, damages according to proof;

20  B.       On the fifth cause of action, restitution of the monies Plaintiff paid to Defendants

21           for services that they refused to perform;

22  B.       Interest;

23  C.       Costs of suit incurred herein;

24  D.       Such other legal or equitable relief the court may find proper.

25  / / /

26

27

28  / / /

DOWNEY BRAND LLP

## **DEMAND FOR JURY TRIAL**

Pursuant to Code of Civil Procedure section 631 and Section 16 of Article I of the California Constitution, Plaintiff demands a jury trial.

DATED:  October 30, 2023                    DOWNEY BRAND LLP

By: _____

MEGHAN M. BAKER
MICHAEL J. LAINO
Attorneys for Raley's

DOWNEY BRAND LLP

# EXHIBIT C

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
MEGHAN M. BAKER (Bar No. 243765)/MICHAEL J. LAINO (Bar No. 326369)
DOWNEY BRAND LLP
621 Capitol Mall, 18th Floor
Sacramento, California 95814

TELEPHONE NO.: 916.444.1000   FAX NO. *(Optional)*: 916.444.2100
E-MAIL ADDRESS: mbaker@downeybrand.com/mlaino@downeybrand.com
ATTORNEY FOR *(Name)*: Raley's

*FOR COURT USE ONLY*

ELECTRONICALLY FILED
by Superior Court of CA,
County of Yolo,
on 10/27/2023 3:04 PM
By: A Sullivan, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF YOLO
STREET ADDRESS: 1000 Main Street
MAILING ADDRESS: 1000 Main Street
CITY AND ZIP CODE: Woodland 95695
BRANCH NAME:

CASE NAME: Raley's v. Rimini Street, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CV2023-2258 |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☒ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify)*: Five
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: October 27, 2023

Meghan M. Baker
(TYPE OR PRINT NAME)  ▶  *(signature)*  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　Medical Malpractice– Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
　Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
　Negligent Breach of Contract/ Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case–Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ–Administrative Mandamus
　Writ–Mandamus on Limited Court Case Matter
　Writ–Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal–Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment *(non-domestic relations)*
　Sister State Judgment
　Administrative Agency Award *(not unpaid taxes)*
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
　Declaratory Relief Only
　Injunctive Relief Only *(non-harassment)*
　Mechanics Lien
　Other Commercial Complaint Case *(non-tort/non-complex)*
　Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief From Late Claim
　Other Civil Petition

**SUM-100**

# SUMMONS ON FIRST AMENDED COMPLAINT
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Rimini Street, Inc., a Nevada corporation;
Rimini Street, Inc., a Delaware corporation; and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Raley's, a California corporation

ELECTRONICALLY FILED
by Superior Court of CA,
County of Yolo,
on 10/30/2023 2:56 PM
By: A Akanno, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>YOLO COUNTY SUPERIOR COURT<br>1000 Main Street<br>Woodland, CA 95695 | CASE NUMBER:<br>*(Número del Caso):*<br>CV2023-2258 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
MEGHAN M. BAKER (SBN 243765)   MICHAEL J. LAINO (SBN 326329)
DOWNEY BRAND LLP          mbaker@downeybrand.com     mlaino@downeybrand.com
621 Capitol Mall, 18th Floor, Sacramento, CA 95814      TEL (916) 444-1000  FAX (916) 444-2100

| DATE:<br>*(Fecha)* 10/30/2023 | SHAWN C. LANDRY | Clerk, by<br>*(Secretario)* | /s/ A Akanno | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |
|---|---|---|